BARKDULL, Judge,
dissenting.
Following this court’s opinion of S & T Anchorage, Inc. v. Lewis, 575 So.2d 696 (Fla. 3d DCA1991) the matter recurred in the trial court and resulted in a final judgment for S & T Anchorage, Inc. which reads as follows:
A SUMMARY JUDGMENT entered by this court was reversed upon a determination that a genuine issue of material fact existed as to whether the Counter-Claimant, Jonathan Lewis, has a right to assert an individual claim against S & T Anchorage, Inc., for waterfront rights in the Anchorage subdivision, separate and distinct from his derivative right as a member of the Anchorage Owners Association. The cause was remanded for trial, and was tried before the court.
On the evidence presented, the court finds that under the provisions of the Declaration Lewis does have an individual right to assert his claim; the court further finds, however, that he has failed to establish entitlement to the claimed waterfront rights.
Lewis bases his claim for waterfront rights upon the first sentence of Article 8 of the Declaration:
‘The Property contains a dock area which is part of the Common Area of the Property.’
The provisions of Article 8 which follow this first sentence relate to procedures for purchase and maintenance of dock slips and dock spaces.
In Count I of his counterclaim Lewis seeks judgment requiring the conveyance by S & T to the Association of the “common area” as defined in the Declaration, including a “waterfront peninsular” (sic); in Count II he seeks an easement by necessity to gain access to the water *481 front. The evidence reflects the intent and understanding of the parties at the time of Lewis’ purchase of his property to be that it would be only upon Lewis’ obtaining a boat slip that he would obtain “waterfront right”, i.e.: access to the dock area.
More particularly, the understanding was that the dock slips would first be offered to the owners of lot 8 and lot 9; those docks slips not purchased would then be offered to the other lot owners in order of the date of purchase of the lot; in that event, access to the dock area would then provided. In making this determination, the court has considered the provisions of Article 8 in its entirety, the testimony of the parties and witnesses and the conduct of the parties.
The purpose of Article 8 was not to create unequivocal waterfront access, but rather to establish a mechanism for Association maintenance of a dock area and dock slips for those who do own the boat slips adjacent to Lots 8 and 9 (unless assigned by the Association to the dock slip owners).
Article 8 does not establish an individual property right in a waterfront peninsula and access thereto as sought by Lewis but rather creates a maintenance vehicle for the ultimate owners of the dock slips. WHEREFORE, IT IS ADJUDGED that Jonathan Lewis, Counter-Plaintiff, take nothing by this action and that S & T Anchorage, Inc., Counter-Defendant, go hence without day. Ruling is reserved for assessment of costs.
On appeal the appellant contends that he is entitled to an absolute right to an easement to the dockage area, even though he admits he has not purchased a boat slip, contending that this court held such as a matter of law in the prior opinion. I find on examination of the briefs in the original cause that one of the issues was Lewis’ right to bring the action individually, rather than the condominium association. The prior opinion found that he had standing, but did not determine his rights. I would affirm the trial court’s final judgment. Lewis purchased a landlocked lot, recognized that he could not purchase a slip, attempted to purchase a slip a year later, and was declined. He claims a right in the dockage area because of the provisions of Article 8 of the declaration which establishes a mechanism for the sale and maintenance of the boat slips.[1] At the time the developer recorded a plat of the subdivision, the area referred to as the dock peninsula was not a part of the plat. The plat contains the following restrictive language: “[t]he easements, as shown by dashed lines hereon are reserved for installation and maintenance of utilities.” also, the deed to appellant’s lot contains the following restrictive language: “subject only to the following_ 3. Restrictions and dedications shown in plat;” Consequently, the area involved was never a part of the plat. It is still owned by the developer appellee. An easement can only be created by an instrument of the same dignity as one which would convey an interest in real property. Winthrop v. Wadsworth, 42 So.2d 541 (Fla.1949); Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926). I find no evidence in the record of any such written instrument. I find no error, therefore, in the trial court’s denial of rights to the appellant at this time. See and compare Tortoise Island Communities, Inc. v. Moorings Assn. Inc., 489 So.2d 22 (Fla.1986); Katcher v. San Souci Co., 200 So.2d 826 (Fla. 3d DCA1967), cert. discharged, 217 So.2d 297 (Fla.1969); Owen v. Yount, 198 So.2d 360, 362-63 (Fla. 2d DCA1967), cert. denied, 204 So.2d 330 (Fla.1967).
*482 Therefore, I would affirm the final judgment here under review for the reasons above stated.

. Article 8 reads, in relevant part:
The Property contains a dock area which is a part of the Common Area of the Property. Separate dock slips or spaces may be designated by the Declarant or Board of Directors and may be available for purchase from the Declarant by Owners of Lots. Upon purchase by an Owner of a dock slip or space, said Owner and his guests shall have the exclusive use of said dock slip or space. Each Owner of a dock slip or space shall be assessed a separate monthly maintenance charge to be determined by the Board of Directors, which said charge shall be uniform for all dock slips and spaces, and it shall be the responsibility of the Association to maintain the dock area and dock slips and harbor area.